IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF THE | ) | |
| COLUMBIA/WILLAMETTE, INC.; ET AL., | ) | Civil No. 95-1671-JO |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| AMERICAN COALITION OF LIFE ACTIVISTS; | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

Carol J. Bernick
DAVIS WRIGHT TREMAINE, LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, OR  97201

Maria T. Vullo
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY  10019

 Attorneys for Plaintiffs

Kelly W. G. Clark
Kristian S. Roggendorf
O'DONNELL & CLARK, LLP
1706 N.W. Glisan, Suite 6
Portland, OR  97209

Edward L. White, III
THOMAS MORE LAW CENTER
3475 Plymouth Road, Suite 100
Ann Arbor, MI  48105

Christopher A. Ferrara
Denis V. Brenan
AMERICAN CATHOLIC LAWYERS ASSOCIATION
50 South Franklin Turnpike
Ramsey, NJ  07446

   Attorneys for Defendants

JONES, Judge:

   In an opinion issued May 16, 2002, the Ninth Circuit, *en banc*, affirmed the judgment

entered on the jury verdict and the Amended Order and Permanent Injunction in this case "in all

respects but for punitive damages, as to which we remand."  Planned Parenthood v. Amer.

Coalition of Life, 290 F.3d 1058, 1088 (9th Cir. 2002), as amended on denial of reh'g *en banc*

(July 10, 2002).  The Supreme Court denied defendants' petition for a writ of certiorari on July 9,

2003, and the Ninth Circuit then issued the mandate.

   The case is now before me on remand.  Specifically, in the *en banc* decision, the Ninth

Circuit instructed as follows:

>    ACLA submits that the * * * punitive award amounts to judgment without
> notice contrary to BMW of North America, Inc. v. Gore, 517 U.S. 559 * * *
> (1996).  We have since discussed the subject in depth in In re Exxon Valdez, 270
> F.3d 1215, 1241 (9th Cir. 2001).  Although our review is de novo, the district
> court should be given the opportunity to evaluate the punitive damages and to
> make findings with respect to its propriety.  Therefore, we vacate the award of

2 - OPINION AND ORDER

<u>punitive damages and remand for the district court to consider in the first instance</u>
<u>whether the award is appropriate in light of Exxon Valdez.</u>

290 F.3d at 1086 (emphasis added).

In connection with the remand, defendants have filed motions (# 790) that, in essence, invite the court to reexamine almost all of the key rulings in the case, and/or to grant a new trial on all issues, including liability. Plaintiffs, in turn, move to strike (# 793) defendants' motions except to the extent that they address the issue of punitive damages. The parties engage in an extensive debate about the "rule of mandate," <u>see, e.g.</u>, <u>U.S. v. Kellington</u>, 217 F.3d 1084, 1092-93 (9th Cir. 2000)(discussing rule), and the scope of the present proceeding. Interesting as that debate might be, I am not persuaded that I must go beyond the remanded issue of punitive damages and will thus limit my decision accordingly.

Thus, I decline to address the multitude of other issues defendants now raise, and specifically deny defendants' demand for a new trial. Plaintiffs' motion to strike (# 793) is, therefore, denied as moot. For the reasons stated below, I conclude that the jury awards of punitive damages in this case are reasonable and constitutional, and therefore affirm the awards on remand.

DISCUSSION

The parties are quite familiar with the underlying facts and the procedural history of this litigation, which will not be repeated here except as necessary to explain my decision.

1.    <u>The Verdict</u>

Following several weeks of trial, in February 1999, the jury rendered a verdict, which, as relevant here, found in favor of all plaintiffs against all defendants on plaintiffs' claims under the

Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE").  The jury calculated an

amount of damages to compensate each plaintiff for harm suffered, and awarded that same

amount against each of the 14 individual defendants.  The compensatory damage awards to each

individual plaintiff on the FACE claims were as follows:

| Plaintiff | Compensatory Damages |
|---|---|
| Dr. Robert Crist | $39,656.00 |
| Dr. Warren Hern | $14,429.00 |
| Dr. Elizabeth Newhall | $15,797.98 |
| Dr. James Newhall | $375.00 |
| Planned Parenthood of the Columbia/Willamette, Inc. | $405,834.86 |
| Portland Feminist Women's Health Center | $50,243.30 |
| Total: | $526,336.14 |

The jury then assessed each of the six plaintiffs punitive damages against each of the 14

defendants on the FACE claims.  The amounts varied, but the jury consistently made the most

significant awards against the two entity defendants (American Coalition of Life Activists

("ACLA") and Advocates for Life Ministries ("ALM")), and the least significant awards against

defendants Catherine Ramey and Dawn Stover.  The total punitive damages award against each

defendant, in descending order of size, is as follows:

| Defendant | Punitives Total By Defendant |
|---|---|
| ACLA | $16,750,000.00 |
| ALM | $16,750,000.00 |

| | |
|---|---|
| Michael Bray | $8,000,000.00 |
| Andrew Burnett | $8,000,000.00 |
| David Crane | $8,000,000,00 |
| Roy McMillan | $8,000,000.00 |
| Donald Treshman | $8,000,000.00 |
| Charles Wysong | $8,000,000.00 |
| Michael Dodds | $5,000,000.00 |
| Timothy Dreste | $5,000,000.00 |
| Joseph Foreman | $5,000,000.00 |
| Bruce Murch | $5,000,000.00 |
| Catherine Ramey | $3,500,000.00 |
| Dawn Stover | $3,500,000.00 |

2.    <u>Standards for Review of Punitive Damages Awards</u>

The Due Process Clause of the Fourteenth Amendment prohibits "grossly excessive or arbitrary punishments on a tortfeasor," because such an award "furthers no legitimate purpose and constitutes an arbitrary deprivation of property." <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 1519 (1996)(citations omitted). In <u>Gore</u>, the Supreme Court articulated a set of three "guideposts" that courts must consider when reviewing a jury's punitive damages award. These guideposts are:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

5 - OPINION AND ORDER

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 1520 (2003)(citing Gore, 517 U.S. at 575).

The post-Gore Supreme Court decision in State Farm, and the Ninth Circuit decision in In re Exxon Valdez, 270 F.3d 1215 (9th Cir. 2003), further explore, in depth, the procedural and substantive constitutional limitations on punitive damages awards. See State Farm, 123 S.Ct. 1513; Exxon Valdez, 270 F.3d at 1238-46. The guideposts and principles set forth in these three cases, therefore, guide my review of the punitive damages awards in this case.

    A.    Reprehensibility of Defendants' Conduct

The "'most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" State Farm, 123 S.Ct. at 1521 (quoting Gore, 517 U.S. at 575). Punitive damages should reflect the enormity of the defendant's offense, and may not be grossly out of proportion to the severity of the offense. Exxon Valdez, 270 F.3d at 1241 (citations omitted). "This principal [reprehensibility] reflects the accepted view that some wrongs are more blameworthy than others." Gore, 517 U.S. at 575. Thus, "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." Id. at 576 (citation and internal quote marks omitted).

Defendants suggest that "it is impossible to conclude that the conduct of the defendants, not trained in the law, was reprehensible * * *." Defendants' Reply Memorandum, p. 10. To the contrary, based on the overwhelming evidence presented at trial, both the jury, following the court's instructions, and this court found the defendants' conduct to be sufficiently blameworthy as to justify substantial punitive damages awards on the one hand, and a permanent injunction to stop the conduct on the other.

Defendants also suggest that the instructions permitted the jury to award punitive damages based on "merely unreasonable conduct." Defendants' Reply Memorandum, p. 11. Defendants are incorrect. In rendering the verdict against each defendant on the FACE claims, the jury found that each defendant "made a [true] threat of force," i.e., a statement that a reasonable person "would foresee * * * would be interpreted by those to whom it is communicated as a serious expression of an intent to bodily harm or assault." Jury Instruction Nos. 10, 11. The jury also found that each defendant "made the threat of force to intimidate or interfere with, or attempt to intimidate or interfere with, the plaintiff's or any other person's ability to obtain or provide reproductive services." Jury Instruction No. 11. As the Ninth Circuit explained in affirming this court's instructions, the statutory standard for liability under FACE subsumes an intent requirement: "FACE itself * * * requires that the threat of force be made with the intent to intimidate. * * * [A defendant] could not be liable under FACE unless *it* made a true threat *with the intent to intimidate* physicians." Planned Parenthood, 290 F.3d at 1074, 1079 (emphasis in original).

In awarding punitive damages against each defendant on the FACE claims, the jury necessarily found that each defendant's conduct

> was malicious, or in reckless disregard of a plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of a plaintiff's rights if, under the circumstances, it reflects complete indifference to the safety and rights of others.

Jury Instruction No. 27. Moreover, in determining the size of each punitive damage award, I specifically instructed the jury to consider the degree of reprehensibility of each defendant's

7 - OPINION AND ORDER

conduct and the relationship of any award to the actual harm inflicted. <u>Id</u>. The sizeable awards
reflect the jury's application of those factors.

Although defendants contend that the only relevant benchmark against which the punitive
damages award should be measured is "what the *jury* found,"[1] my findings, set forth at length in
the Amended Order and Permanent Injunction, were based on the same evidence the jury heard
and reflect the severity and reprehensibility of defendants' conduct. <u>See generally</u> <u>Planned</u>
<u>Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists</u>, 41
F.Supp.2d 1130 (D.Or. 1999). Specifically, I found that:

1.    All defendants used intimidation as a means of interfering with the provision of
reproductive health services;

2.    All defendants acted with malice, in reckless disregard of plaintiffs' rights and
with specific intent in threatening the plaintiffs;

3.    All defendants acted with specific intent and malice in a blatant and illegal
communication of true threats to kill, assault, or do bodily harm to each of the plaintiffs and with
the specific intent to interfere with or intimidate the plaintiffs from engaging in legal medical
practices and procedures;

4.    Each day, plaintiffs' lives and security are endangered because of defendants'
unlawful threats against them;

5.    All plaintiffs have undertaken a variety of security measures in order to ensure
their safety;

6.    All plaintiffs remain threatened by the defendants' threats; and

---

[1]    Defendants' Reply Memorandum, p. 11 n.2 (emphasis in original).

8 - OPINION AND ORDER

7.    In the absence of an injunction, plaintiffs would continue to live as they did before the trial: clad in bulletproof vests and disguises, borrowing cars and varying routes to avoid detection, and constantly in fear of the bodily harm with which they were threatened.[2]

In State Farm, the Supreme Court instructed courts to determine reprehensibility by considering the following factors:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

123 S.Ct. at 1521 (citation omitted).  I agree with plaintiffs that measured against those factors, defendants' intentional threats of violence are at the top of the hierarchy of reprehensibility.  See Swinton v. Potomac Corp., 270 F.3d 794, 818 (9th Cir. 2001)(acts and threats of violence are at top of "hierarchy of reprehensibility").

Defendants caused plaintiffs both emotional distress and economic harm, and did so with malice and in reckless disregard of plaintiffs' rights, with specific intent to threaten plaintiffs. Plaintiffs are financially vulnerable, and defendants targeted this vulnerability.  Indeed, the evidence showed that the defendants intended to scare the plaintiffs sufficiently to cause them to quit performing abortions out of fear for their lives.  Moreover, defendants are, as plaintiffs put it, "recidivists of the worst order."  Plaintiffs' Memorandum in Response, p. 21.  Not only did the defendants repeatedly republish their threats against these plaintiffs, but all have histories of disobeying laws, serving jail time, avoiding judgments (including the judgment in this case), and

---

[2]    See Planned Parenthood, 41 F.Supp.2d 1130 (Findings Nos. 91, 118, 152, 156, 187, 192, 221, 226, 244, 249, 267, 272, 286, 291, 314, 319, 336, 341, 358, 363, 375, 380, 397, 401, 417, 422, 454, 455; and Conclusions of Law Nos. 456-58, 461, and 465 n.1).

violating court orders and injunctions, all with respect to their anti-abortion activities.[3]  <u>See</u>
Plaintiffs' Memorandum in Response, pp. 21-23 (summarizing the evidence, with citations).

As defendants acknowledge in their reply memorandum, "[a] defendant who harbors
actual ill will and subjectively wishes the injurious consequences of his action is truly
reprehensible * * *."  Defendants' Reply Memorandum, p. 11.  These defendants could not be
better or more accurately described.  Thus, with respect to the first <u>Gore</u> guidepost, I find
defendants' conduct to be sufficiently reprehensible to support the awards of punitive damages.

B.    <u>Ratio Analysis</u>

The second indicium of the reasonableness of a punitive damages award is the ratio of the
award to the actual or potential harm inflicted on the plaintiff.  <u>Gore</u>, 517 U.S. at 580, 582.  In
other words, there must be a "'reasonable relationship between the punitive damages award and
<i>the harm likely to result</i> from the defendant's conduct as well as the harm that actually has
occurred.'"  <u>Id</u>. at 581 (<u>quoting</u> <u>TXO Prod. Corp. v. Alliance Res. Corp.</u>, 509 U.S. 443, 460
(1993); emphasis in original).

The Supreme Court has "consistently rejected the notion that the constitutional line is
marked by a simple mathematical formula, even one that compares actual <i>and potential</i> damages
to the punitive award."  <u>Id</u>. at 582 (emphasis in original).  In <u>Gore</u>, the Court explained that

> low awards of compensatory damages may properly support a higher ratio than
> high compensatory awards, if, for example, a particularly egregious act has
> resulted in only a small amount of economic damages.  A higher ratio may also be
> justified in cases in which the injury is hard to detect or the monetary value of

---

[3]      I reject defendants' characterization of this evidence as irrelevant under <u>State</u>
<u>Farm</u>, 123 S.Ct. at 1523.  The evidence is not about others' "hypothetical claims against the
defendant,"  Defendants' Reply Memorandum, p. 15, rather, the evidence demonstrates
defendants' willingness to violate the law and ignore court rulings in their anti-abortion activities.

noneconomic harm might have been difficult to determine.  It is appropriate, therefore, to reiterate our rejection of a categorical approach.  Once again, "we return to what we said  ... in <u>Haslip</u>:[4] 'We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable, that would fit every case.  We can say, however, that [a] general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus.'"

<u>Gore</u>, 517 U.S. at 582-83 (bracketed material in original; citations omitted).

In <u>State Farm</u>, the Supreme Court further elaborated on the ratio guidepost, stating:

We have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award.  * * *  We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.  Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. * * *

Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages."  * * * [A] higher ratio might be necessary where the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. * * * The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

<u>State Farm</u>, 123 S.Ct. at 1524 (internal citations omitted).

Accordingly, the relevant inquiry is whether, in view of each defendant's conduct toward these plaintiffs, the punitive damages awards are reasonable and proportionate to the amount of harm each defendant caused.  Before addressing that issue, however, I must decide two

---

[4]        <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 18 (1991).

preliminary issues. The first is whether each plaintiff is entitled to 14 separate judgments for the same compensatory damages, or the compensatory awards are joint and several as to all defendants. Second, I must decide which proposed comparison of compensatory damages to punitive damages, defendants' or plaintiffs', yields the appropriate ratio for purposes of my review.

With respect to the first issue, it should be beyond cavil that the compensatory awards in this case against these joint tortfeasors and co-conspirators are joint and several,[5] and I so find. See, e.g., U.S. v. Gregg, 226 F.3d 253, 257-60 (3rd Cir. 2000)("Congress intended FACE's compensatory statutory damages be awarded per violation and jointly and severally among defendants"). In calculating the compensatory damages awards in this case, the jury appears to have carefully considered each plaintiff's damages, then awarded that same amount against each individual defendant. The verdicts thus leave no room for a credible debate that the compensatory damages awards were anything but joint and several, and plaintiffs do not now contend and never have contended that they are entitled to recover multiple separate compensatory damage judgments.

This brings me to the second issue, what is the appropriate comparison for purposes of determining ratios. Defendants assert that the only fair calculation is to compare the compensatory damages recoverable by each plaintiff with the total punitive damages awarded each plaintiff against all defendants. See Defendants' Reply Memorandum, p. 17. That comparison yields ratios of compensatory damages to punitive damages, by plaintiff, as follows:

---

[5] Liability is joint and several when "'the creditor may sue one or more of the parties to such liability separately, or all of them together, at his [or her] option.'" U.S. v. Gregg, 226 F.3d 253, 260 (3rd Cir. 2000)(citation omitted).

Crist (366:1); Hern (901:1); E. Newhall (886:1); J. Newhall (37,333:1); Planned Parenthood

(73:1); and Portland Feminist (467:1).  See Defendants' Reply Memorandum, p. 17.

Plaintiffs, in turn, propose an approach that compares the total joint and several liability

of each defendant ($526,336.14) to the total punitive damages awarded against that defendant.

That comparison yields ratios of compensatory damages to punitive damages, by defendant, as

follows:  ACLA (31.8:1); ALM (31.8:1); Bray (15.2:1); Burnett (15.2:1); Crane (15.2:1); Dodds

(9.5:1); Dreste (9.5:1); Foreman (9.5:1); McMillan (15.2:1); Murch (9.5:1); Ramey (6.65:1);

Stover (6.65:1); Treshman (15.2:1); and Wysong (15.2:1).  See Plaintiffs' Memorandum in

Response, p. 8.

A third possible approach, not proposed by either side, would be to compare each

plaintiff's individual compensatory damages and punitive damages awards as to each defendant.

This approach yields extreme variations in ratio, depending on the amount of the compensatory

award.  Thus, the ratios with respect to plaintiff Crist, calculated in this manner, range from a

high of 56.7:1 (ACLA and ALM) to a low of 12.6:1 (Ramey and Stover); for plaintiff Hern, a

high of 103.9:1 (ACLA and ALM) to a low of 34.65:1 (Ramey and Stover); for plaintiff E.

Newhall, a high of 126.6:1 (ACLA and ALM) to a low of 31.6:1 (Ramey and Stover); for J.

Newhall, a high of 5333:1 (ACLA and ALM) to a low of 1333.3:1 (Ramey and Stover); for

Planned Parenthood, a high of 14.78:1 (ACLA and ALM) to a low of 1.85:1 (Ramey and Stover);

and for Portland Feminist, a high of 59.7:1 (ACLA and ALM) to a low of 14.9:1 (Ramey and

Stover).

I have carefully considered all three options, and conclude that the fairest and most

appropriate comparison is that proposed by plaintiffs, which compares the aggregate

13 - OPINION AND ORDER

compensatory damages award against each defendant with the aggregate award of punitive damages against *that defendant*. This approach thus compares the joint and several liability of each defendant for compensatory damages with the defendant's individual liability for punitive damages, which comports with due process and is the proper approach. See Bell v. Clackamas County, 341 F.3d 858, 867-68 (9th Cir. 2003)(on remand, "trial court should evaluate the degree of reprehensibility of each of the defendant's misconduct individually, as opposed to *en grosse*"); Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1024-25 (9th Cir. 1985)(relevant ratio calculated by comparing total compensatory damages for which each defendant was jointly and severally liable with the punitive damages awards against each individual defendant).

Thus, the relevant ratios[6] under my consideration are as follows:

| Defendant | Ratio |
|-----------|-------|
| ACLA | 31.8:1 |
| ALM | 31.8:1 |
| Bray | 15.2:1 |
| Burnett | 15.2:1 |
| Crane | 15.2:1 |
| Dodds | 9.5:1 |
| Dreste | 9.5:1 |
| Foreman | 9.5:1 |
| McMillan | 15.2:1 |
| Murch | 9.5:1 |

---

[6]     The numbers have been rounded as appropriate.

14 - OPINION AND ORDER

| | |
|---|---|
| Ramey | 6.7:1 |
| Stover | 6.7:1 |
| Treshman | 15.2:1 |
| Wysong | 15.2:1 |

These ratios "can be contemplated while maintaining normal respiration," Lee v. Edwards, 101 F.3d 805, 811 (2nd Cir. 1996), and are not unconstitutionally excessive. This is particularly true in view of defendants' egregious, unrelenting, and unapologetic conduct. Moreover, the above ratios compare only the damages plaintiffs were able to prove at trial, and do not incorporate any potential ongoing or future economic or noneconomic harm to them. See the portions of the Amended Order and Permanent Injunction set forth supra, in which I acknowledge plaintiffs' ongoing harm.

This case presents the type of situation the Supreme Court anticipated in Gore and State Farm, where a higher ratio can comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages," or "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." Gore, 517 U.S. at 582; State Farm, 123 S.Ct. at 1524. Thus, in Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672 (7th Cir. 2003), the Seventh Circuit approved a compensatory to punitive damage ratio of 37.2:1 where defendant motel deliberately exposed its customers to a substantial risk of being bitten by bedbugs: "The defendant's behavior was outrageous but the compensable harm done was slight and at the same time difficult to quantify because a large element of it was emotional." 347 F.3d at 677. And in Swinton, supra, a race discrimination in employment case, the Ninth Circuit approved a compensatory to punitive damage ratio of 28:1 in view of "particularly

15 - OPINION AND ORDER

egregious" acts and "noneconomic harm that might have been difficult to determine." Swinton, 270 F.3d at 818 (citation and internal quote marks omitted).

The present case was rife with evidence that plaintiffs suffered harm from the conduct of these defendants, harm that likely was difficult for the jury to quantify. Defendants forced the plaintiffs, out of fear, to restructure their lives and those of their children, to undertake various security measures, to change their habits and routines, and to view the world around them with suspicion. Much more than the bedbug bites in Mathias, even more than racial slurs and harassment in Swinton, the personal harm to these plaintiffs caused by defendants' threats of violence might be difficult to quantify but justifies a higher ratio in the award of punitive damages.

In summary, I cannot say that the ratios in this case are constitutionally excessive or "jar[] [my] 'constitutional sensibilities.'" Swinton, 270 F.3d at 819 (quoting Haslip, supra, 499 U.S. at 18). I therefore find the punitive damages awards, with respect to this guidepost, to be reasonable and in proportion to the amount of harm each defendant caused.

C.    Comparable Penalties

The third indicium of "excessiveness" involves a comparison between the punitive damages awards and the civil penalties that could be imposed for comparable conduct. State Farm, 123 S.Ct. at 1526 (noting that the existence of a criminal penalty bears on the seriousness of the conduct, but has limited utility in determining the amount of the punitive award). In this regard, FACE provides both criminal penalties[7] and civil remedies for each violation.

---

[7]    The criminal penalties can include prison time and criminal fines. Offenses involving exclusively nonviolent physical obstruction carry fines of not more than $10,000 and

(continued...)

In action commenced by the United States Attorney General or state attorneys general, the available civil remedies include injunctive relief, compensatory damages to the persons aggrieved, and civil penalties.  As relevant,[8] the civil penalty for a first offense is $15,000, and $25,000 for each subsequent violation.  18 U.S.C. §§ 248(c)(2)(B) and (c)(3)(B).  Notably, in an action commenced by the person or persons aggrieved, FACE places no limit on the amount of compensatory or punitive damages that may be recovered, but does provide for statutory damages *in lieu of* actual damages in the amount of $5,000 per violation.  18 U.S.C. § 248(c)(1)(B).

In this case, defendants engaged in repeated violations of FACE by republishing the same threats over several years' time, from 1995 through at least early 1999.  Defendants unveiled the Deadly Dozen poster in Washington, D.C. in January 1995 and the Crist poster in August 1995, and revealed the so-called "Nuremberg Files," in hard copy form, at a January 1996 ACLA event in Washington, D.C.  See Planned Parenthood, 41 F.Supp.2d at 1131-34.  Plaintiffs commenced this action in October 1995; despite plaintiffs' allegations that defendants' actions involved true threats of violence, they continued to publish and republish the posters and the Nuremberg Files until this court issued the Order and Permanent Injunction on February 25, 1999.  See Planned Parenthood, 1999 WL 65450 (D.Or. 1999).

_____

[7](...continued)
six months imprisonment for the first offense, and fines of not more than $25,000 and 18 months imprisonment for each subsequent offense.  Offenses involving bodily injury can bring prison terms of 10 years, and offenses involving death can result in any term of years up to life.  See 18 U.S.C. § 248(b).

[8]    Defendants' threats do not qualify as "non-violent physical obstruction[s]," which carry lesser penalties.  See 18 U.S.C. § 248(c)(2)(B)(i) and (ii).

Defendants' suggestion that until the Ninth Circuit issued its *en banc* decision in May

2002, they had "no" notice that their conduct crossed the First Amendment line is, at best,

untenable.  As the Ninth Circuit recounted in the *en banc* decision,

> By January 1995, ACLA knew the effect that "WANTED,"
> "unWANTED," OR "GUILTY" posters had on doctors named in them.  For
> example, in a September 1993 issue of *Life Advocate* which reported that an
> "unwanted" poster was being prepared for [Dr.] Britton, ALM remarked of the
> [Dr.] Gunn murder that it "sent shock waves of fear through the ranks of abortion
> providers across the country.  As a result, many more doctors quit out of fear for
> their lives, and the ones who are left are scared stiff."  * * *  Of another doctor
> who decided to quit performing abortions after circulation of a "Not Wanted"
> poster, Bray wrote that "it is clear to all who possess faculties capable of inductive
> analysis:  he was bothered and afraid."  Wysong also stated:  "Listening to what
> abortionists said, abortionists who have quit the practice who are no longer killing
> babies but are now pro-life.  They said the two things they feared most were being
> sued for malpractice and <u>having their picture put on a poster</u>."  And Burnett
> testified with respect to the danger that "wanted" or "guilty" posters pose to the
> lives of those who provide abortions:  "I mean, <u>if I was an abortionist, I would be
> afraid</u>."

<u>Planned Parenthood</u>, 290 F.3d at 1065-66 (emphasis added).

While the comparable civil penalties in FACE provide some guidance in this court's

determination of the reasonableness of the punitive damages awards, they are a starting point, not

an upper limit.  <u>See State Farm</u>, 123 S.Ct. at 1526 (suggesting that a reasonable punitive damage

award would be "at or near the amount of compensatory damages," a figure 100 times the

comparable civil penalty of $10,000); <u>see also</u> <u>Zhang v. American Gem Seafoods, Inc.</u> 339 F.3d

1020, 1045 (9th Cir. 2003)(upholding $2.6 million punitive award where damages subject to

statutory cap of $300,000).

Turning to the punitive damages awards in this case, and considering the awards

individually by defendant and not in the aggregate, as defendants would desire, I cannot say that

18 - OPINION AND ORDER

the awards are excessive when compared to the civil penalties available per FACE violation.  As plaintiffs aptly describe it, the evidence at trial left no doubt that through use of the posters and Nuremberg Files, defendants embarked on a "reign of terror" intentionally designed to make the plaintiffs fear for their lives.  Defendants continued their unlawful threats throughout the proceedings in this court and did so without apology, even after the verdict was announced.  <u>See</u> Plaintiffs' Memorandum of Law in Further Support, p. 3 n.2.  Each of defendants' multiple publications qualify as "subsequent violation[s]" of FACE; presumably, any civil penalties imposed under FACE consequently would be substantial.

In summary, I cannot say that the jury's awards of punitive damages were grossly disproportionate or excessive.  I therefore conclude that the awards comport with the due process requirements of the Fourteenth Amendment and are proper.[9]

---

[9]    I acknowledge Judge Kozinski's concern that as a result of the liability verdict and punitive damages awards, defendants "will be destroyed financially by a huge debt * * * [that] will * * * prevent them from ever again becoming financially self-sufficient."  <u>Planned Parenthood</u>, 290 F.3d at 1101 (Kozinski, J., dissenting).  As a practical matter, however, these defendants either have no assets or long ago rendered themselves judgment proof; thus, my review of the punitive damages awards largely is academic.  Indeed, despite tremendous post-judgment collection efforts, plaintiffs' recovery to date has been *de minimus*.

19 - OPINION AND ORDER

CONCLUSION

Defendants' Motions on Remand (# 790) are DENIED.  Plaintiffs' Motion to Strike

(# 793) and defendants' Motion to Preclude Further Briefing (# 808) are DENIED as MOOT.

The jury awards of punitive damages are affirmed in full.

IT IS SO ORDERED.

DATED this 28th day of January, 2004.


 /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

20 - OPINION AND ORDER